UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

EASTERN DIVISION


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     PLAINTIFF, | ) CASE NO. 2:21-cr-89 |
| | ) |
|             vs. | ) |
| | ) |
| JAMES VERL BARLOW, | ) |
| | ) |
|   DEFENDANT. | ) |
| _____ | ) |

TRANSCRIPT OF **_PLEA_** PROCEEDINGS
VIA VIDEOCONFERENCE
BEFORE THE HONORABLE SARAH D. MORRISON
TUESDAY, NOVEMBER 23, 2021; 3:21 P.M.
COLUMBUS, OHIO

   FOR THE PLAINTIFF:
      Kenneth L. Parker
      United States Attorney
      By:  MICHAEL J. HUNTER
      ASSISTANT UNITED STATES ATTORNEY
      303 Marconi Boulevard, 2nd Floor
      Columbus, Ohio 43215

   FOR THE DEFENDANT JAMES BARLOW:
      Brown Mishler PLLC
      By:  CHRISTOPHER S. MISHLER, ESQ.
      911 North Buffalo Drive, Suite 202
      Las Vegas, Nevada 89128

      Brunner Quinn
      By:  STEVEN M. BROWN, ESQ.
      5664 Montridge Lane
      Dublin, Ohio 43016


- - -

Proceedings recorded by mechanical stenography,
transcript produced by computer.

*Allison A. Kimmel, FAPR, RDR, CRR, CRC*
*Federal Official Court Reporter*
*85 Marconi Boulevard*
*Columbus, Ohio 43215*
*614.719.3225*

2

```
 1              Tuesday Afternoon Session
 2                   November 23, 2021
 3                        - - -
 4       (The following proceeding was held in open court via
 5   videoconference.)
 6              THE COURT:  All right.  Ms. Bragg, will you please
 7   call the case.
 8              DEPUTY CLERK:  United States of America versus James
 9   V. Barlow, Case No. 2:21-cr-89-1.
10              THE COURT:  Thank you.  If counsel will please enter
11   their appearances, starting with counsel for the government.
12              MR. HUNTER:  Good afternoon, Your Honor.
13   Michael Hunter on behalf of the United States.
14              THE COURT:  Thank you.
15              MR. MISHLER:  Good afternoon, Your Honor.
16   Christopher Mishler appearing on behalf of Mr. Barlow who is
17   present by video and in custody.
18              THE COURT:  Thank you.  I see Mr. Brown as well.  Good
19   afternoon, Mr. Barlow.
20              THE DEFENDANT:  Good afternoon, Your Honor.
21              THE COURT:  Can you see both me and all the lawyers on
22   your video screen?
23              THE DEFENDANT:  Yes, I can, Your Honor.
24              THE COURT:  Can you also hear all of us?
25              THE DEFENDANT:  Yes, I can, Your Honor.
```

3

1          THE COURT:  So do you agree to proceed by video

2    conference this afternoon?

3          THE DEFENDANT:  I do agree.

4          THE COURT:  In light of Mr. Barlow's agreement and

5    pursuant to the Court's general order, I do find it's in the

6    interests of justice that we proceed by video conference.

7          With that said, Mr. Barlow, if we lose you, if for some

8    reason the technology stops working, we will stop the

9    proceedings because it is important that you are able to see

10   and hear and fully participate in the proceedings.

11         Mr. Hunter, what is the status of this case?

12         MR. HUNTER:  Your Honor, the United States has filed a

13   Superseding Information in this case which charges the

14   defendant with conspiracy to possess with intent to distribute

15   a controlled substance analogue, in this case, an analogue of

16   psychedelic mushrooms, which are a Schedule I controlled

17   substance.

18         The Superseding Information also adds a count for

19   conspiracy to commit money laundering, as well as a forfeiture

20   provision in the count, which seeks the forfeiture of

21   cryptocurrency, account information, real property, and other

22   property as drug proceeds and profits in this case.

23         We are before the Court this afternoon -- I'm sorry --

24   at the same time we filed that Superseding Information, we also

25   filed a plea agreement by which the defendant agrees to plead

4

1  guilty to both counts charged in the Superseding Information

2  and consents to the forfeiture.

3       We're before the Court this afternoon for the defendant

4  to waive his right to the presentment of these new charges to

5  the grand jury and to enter a guilty plea pursuant to the plea

6  agreement filed with the Court.

7       THE COURT: Okay. And just so for my edification, the

8  Superseding Information is only as to Mr. Barlow. And to the

9  extent there are co-defendants, the original Indictment is

10  still in place for all of those defendants; is that right?

11       MR. HUNTER: That is correct, Your Honor.

12       THE COURT: Okay. So, Mr. Barlow, is that correct?

13  Do you wish to withdraw your previously entered plea of not

14  guilty -- because you did enter a plea of not guilty to the

15  original Indictment -- and now enter a plea of guilty to the

16  two counts of the Superseding Information?

17       THE DEFENDANT: Yes, Your Honor.

18       THE COURT: You know, do I need to do a waiver for

19  him, Mr. Hunter, of the right to the Indictment since we're

20  proceeding on the Information?

21       MR. HUNTER: I believe he would have to waive

22  Indictment on the new charges. Yes, Your Honor.

23       THE COURT: I think you are right. Let me -- I

24  apologize, Mr. Barlow.

25       Give me just a minute so I can pull up -- because

5

1   there's some specific questions I need to ask you about an

2   Information as opposed to an Indictment.

3          Okay.  Thank you, Mr. Barlow.

4          So what Mr. Hunter just indicated and what we're talking

5   about is a Superseding Information, and so an Information is a

6   charging document by the United States Attorney, and in this

7   case the Superseding Information does charge you with two

8   counts.

9          Did you receive a copy of the Information?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  And did you get a chance to review the

12  charges in that document?

13         THE DEFENDANT:  I did.

14         THE COURT:  Did you also have an opportunity to talk

15  about it with your attorneys?

16         THE DEFENDANT:  Yes, I have.

17         THE COURT:  Do you understand what's charged against

18  you in the Information?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT: Okay.  Mr. Mishler, on behalf of

21  Mr. Barlow, do you want to waive a formal reading of the

22  Information?

23         MR. MISHLER:  Yes, please, Your Honor.

24         THE COURT:  Okay.  So, Mr. Barlow, we're talking about

25  this charging document as an Information.  That is only a

6

1    charge by the United States Attorney.

2           You have a constitutional right to be charged by an

3    Indictment of the grand jury, and this is not an Indictment by

4    the grand jury.  It's only a charge of the United States

5    Attorney.

6           You can give up your right to an Indictment and agree to

7    be charged by the Information.  But unless you agree to give up

8    your right to an Indictment, you cannot be charged with a

9    felony offense unless the grand jury finds by a return of the

10   Indictment that there is probable cause to believe that a

11   federal crime has been committed and also probable cause to

12   believe that you are the one that committed it.

13          If you decided not to give up your right to Indictment,

14   the government could present your case to the grand jury and

15   ask that it indict you.

16          A grand jury is made up of between 16 and 23 people, and

17   at least 12 of those people would have to agree that there is

18   probable cause to believe that you committed this offense

19   before an Indictment could be returned against you.

20          If the government presented your case to the grand jury,

21   the grand jury might or it might not indict you.  But if you

22   decide to give up your right to an Indictment and agree to be

23   charged by the Information, the case will proceed against you

24   on the Information just as if the grand jury had in fact

25   indicted you on these two charges.

*Allison A. Kimmel, FAPR, RDR, CRR, CRC*
*Federal Official Court Reporter*
*85 Marconi Boulevard*
*Columbus, Ohio 43215*
*614.719.3225*

7

1          Do you understand you have a constitutional right to an

2    Indictment by a grand jury?

3          THE DEFENDANT:  Yes, I understand that one,

4    Your Honor.

5          THE COURT:  And do you -- did you discuss giving up

6    your right to an Indictment on these superseding charges to

7    your attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Has anybody made any threats or promises

10   to you to try to convince you to give up your right to an

11   Indictment by the grand jury?

12         THE DEFENDANT:  No, Your Honor.

13         THE COURT:  Do you want to give up your right to

14   Indictment and agree to be charged by this Superseding

15   Information?

16         THE DEFENDANT:  I agree to be charged by the

17   Superseding Information, Your Honor.

18         THE COURT:  Mr. Mishler, are you aware of any reason

19   why Mr. Barlow should not give up his right to an Indictment?

20         MR. MISHLER:  No, Your Honor.

21         THE COURT:  Okay.  In light of the discussion, I do

22   accept, Mr. Barlow, your waiver of a right to an Indictment,

23   and the case will proceed against you on the Superseding

24   Information by the United States Attorney.

25         So now that we have the right charging document in front

8

1    of us, is that right, that you do want to enter a plea of not

2    guilty to the two -- excuse me -- enter a plea of guilty to the

3    two counts of the Superseding Information?

4          THE DEFENDANT:  I will plead guilty to the two counts,

5    Your Honor.

6          THE COURT:  Okay.  Well, before I accept your plea of

7    guilty, I do have to determine that your plea is made knowingly

8    and voluntarily, with an understanding of the nature of the

9    charges against you as well as the consequences of your plea.

10         I don't have to accept your guilty plea unless I'm

11   satisfied of your guilt and also satisfied that you fully

12   understand all of your rights.

13         So in order to make this determination, I do have to ask

14   you several questions this afternoon.

15         We'll begin by placing you under oath.  So if you will

16   raise your right hand.

17         DEPUTY CLERK:  You do solemnly swear that the answers

18   given to the questions propounded to you in this proceeding

19   shall be the truth, the whole truth, and nothing but the truth

20   as you shall answer unto God.

21         If you so swear, please say I do.

22         THE DEFENDANT:  I do.

23         THE COURT:  Thank you.  You may put your hand down.

24         Do you understand that you are now under oath and so if

25   you give false answers to any of my questions you can be

9

1    charged with perjury or with making a false statement?

2            THE DEFENDANT:  I understand, Your Honor.

3            THE COURT:  Okay.  Will you tell me your full name

4    please.

5            THE DEFENDANT:  James Verl Barlow.

6            THE COURT:  How old are you?

7            THE DEFENDANT:  I am 45.

8            THE COURT:  How far did you go in school?

9            THE DEFENDANT:  I have a bachelor's of science in

10   French, I doubled in computer science, and multiple degrees

11   through the military or multiple military -- military

12   occupational specialties.

13           THE COURT:  What branch of the military were you in?

14           THE DEFENDANT:  Army for 25 years, Your Honor.  I just

15   retired in 2019.

16           THE COURT:  Very good for you.  Thank you for your

17   service.

18        Have you been able to communicate with your attorneys in

19   preparation for the hearing today?

20           THE DEFENDANT:  Yes, I have.

21           THE COURT:  Have you ever been treated for a mental

22   illness or for an addiction?

23           THE DEFENDANT:  No, I have not, Your Honor.

24           THE COURT:  Have you taken any narcotic drugs,

25   medicine or pills, or drunk any alcoholic beverages in the last

10

1    24 hours?

2              THE DEFENDANT:  No, I've not, Your Honor.

3              THE COURT:  So -- it's always an easier question when

4    the defendants are in custody than when they are not, so good

5    answer.

6         Mr. Mishler, do you have any doubt as to Mr. Barlow's

7    competence to plead at this time?

8              MR. MISHLER:  I have no concerns, Your Honor.

9              THE COURT:  And did you have a sufficient opportunity

10   to confer with him in preparation for the hearing today?

11             MR. MISHLER:  Yes, Your Honor, I did.

12             THE COURT:  And I know, Mr. Mishler, you did a moment

13   ago waive the right to a reading of the Superseding

14   Information.

15        Is that still the same for the portion of the hearing on

16   the plea?

17             MR. MISHLER:  Yes, Your Honor, it is.

18             THE COURT:  Okay.  So, Mr. Barlow, I know we talked --

19   I've asked you this question before, but I do need to repeat

20   it.

21        With regard to the Superseding Information, did you

22   review that Superseding Information and fully discuss the

23   charges with your lawyer?

24             THE DEFENDANT:  Yes, I did.

25             THE COURT:  Okay.  Are you fully satisfied with the

11

1   advice and representation that your lawyers have given you in

2   this case?

3           THE DEFENDANT:  Affirmative.

4           THE COURT:  I'm sorry?  You said what?  Affirmative.

5   Okay.  Thank you.  So we're talking about the Superseding

6   Information, and it does charge you with two counts.

7           Count 1 charges you with conspiracy to possess with

8   intent to distribute controlled substances, and Count 2 charges

9   you with conspiracy to commit money laundering.

10          So with regard to those two charges, the government

11  would have to prove certain facts or elements before a jury

12  could find you guilty beyond a reasonable doubt.

13          The elements of the charges against you are -- and I'm

14  going to read them to you, they are in the plea agreement

15  itself, but I'm going to read them to you for the record.

16          For Count 1, the conspiracy to distribute and to possess

17  with intent to distribute a controlled substance, the elements

18  of that are, first, that you agreed to violate federal drug

19  laws with one or more persons; second, that you had knowledge

20  of and intended to join the conspiracy; third, that you

21  participated in the conspiracy; fourth, that the conspiracy

22  involved the possession with the intent to distribute a

23  detectable amount of a controlled substance analogue commonly

24  known as psychedelic mushrooms, a Schedule I controlled

25  substance.  The fifth element is that the conspiracy existed at

12

1   or around the time alleged in the Superseding Information in

2   the Southern District of Ohio and elsewhere.

3        As to Count 2, which is the conspiracy to commit money

4   laundering, the elements are, first, that you conspired with at

5   least one other person to commit the crime of money laundering;

6   second, that you knowingly and voluntarily joined the

7   conspiracy; and then the third element is also that that

8   conspiracy existed at or around the time alleged in the

9   Southern District of Ohio and elsewhere.

10       Do you understand that those are things that the

11  government would have to prove beyond a reasonable doubt before

12  you could be convicted on those two charges?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT: So proper plea agreements are allowed, and

15  you and all counsel do have a duty to disclose the existence

16  and all of the terms of any such agreement.

17       The plea agreement that you entered into with counsel

18  for the government has been given to me, and I have reviewed

19  it, but I'm going to now have Mr. Hunter provide a summary of

20  the plea agreement for the record.

21       Mr. Hunter, would you provide that summary, please.

22            MR. HUNTER:  Yes, Your Honor.  Thank you.

23       Your Honor, in the Superseding Information, which is

24  filed with the Court, the defendant again agrees to plead

25  guilty to Count 1 which charges conspiracy to possess with

13

1    intent to distribute a controlled substance, in this case an

2    analogue of a controlled -- Schedule I controlled substance,

3    and that is psychedelic mushrooms.

4        In Count 2, he agrees to plead guilty to conspiracy to

5    commit money laundering.

6        In this plea agreement, the defendant acknowledges the

7    essential elements of the offenses, and those are the same

8    elements that the Court has just gone over with him.

9        The defendant also acknowledges the possible penalties

10   that he faces in this case.  And that is, for Count 1, a term

11   of imprisonment of up to 20 years; a term of supervised release

12   from a mandatory minimum of three years up to life; a fine not

13   to exceed $1 million; and a mandatory special assessment of

14   $100.

15       The potential penalties for Count 2 are, again, a term

16   of imprisonment not to exceed 20 years; a term of supervised

17   release of up to three years; a fine not to exceed $500,000 or

18   twice the value of the property involved in the transactions,

19   whichever is greater; and then, again, a mandatory special

20   assessment of $100.

21       So that would be a total of special assessments of $200

22   in this case.

23       The defendant acknowledges that he has several trial

24   rights, which includes the right to plead not guilty, to have a

25   trial by jury, to be assisted by counsel during such trial, to

14

1    confront and cross-examine adverse witnesses, to testify if he

2    desires, and to present evidence and compel the attendance of

3    witnesses on his behalf.

4        He also has the right to not be compelled to testify or

5    present any evidence and to not have those decisions held

6    against him.

7        And, of course, he has the right to be presumed innocent

8    throughout the trial and unless and until a jury finds proof of

9    guilt beyond a reasonable doubt.

10       In this plea agreement, Mr. Barlow acknowledges that if

11   the Court accepts his plea of guilty pursuant to the plea

12   agreement, there will be no trial and he will effectively waive

13   those rights.

14       The defendant acknowledges that, in determining a

15   sentence, the Court has an obligation to calculate the

16   applicable sentencing guideline range and to consider not only

17   that range but any possible departures under both the

18   sentencing guidelines and federal law.

19       The parties have agreed to a Statement of Facts.  It is

20   set forth in this agreement as Attachment A.

21       The parties agree to recommend to the Court that the

22   Statement of Facts provides a factual basis for Mr. Barlow's

23   plea of guilty.

24       The parties also agree to make several recommendations

25   to the Court regarding the application of the sentencing

1    guidelines.  These are contained in Paragraph 7.

2          The parties agree to recommend that the relevant conduct

3    in this case consists of a converted drug weight of

4    639 kilograms of psychedelic mushroom analogue, which falls

5    into a range of greater than 400 kilos but less than 700 kilos

6    of converted drug weight.  That should result in an Offense

7    Level of 26.

8          The parties also agree that pursuant to guideline

9    2S1.1(b)(2)(B), the Offense Level for Count 1 should be

10   increased by two levels because this defendant by pleading

11   guilty will have been convicted of 18 United States Code 1956.

12         The parties also agree to recommend that the relevant

13   conduct on the date of the defendant's arrest as a result of

14   the property and proceeds derived and obtained as a result of

15   both the convictions in Count 1 and Count 2 consists of

16   approximately $12 million -- between $12 million and

17   $15 million in assets, currency, and property, which pursuant

18   to guideline 2S1.1 and 2B1.1(b)(1)(k) is more than 900 --

19   excuse me -- more than nine million five hundred [sic] but less

20   than 25 million, and that corresponds to an Offense Level of

21   28.

22         The parties do recommend to the District Court that any

23   sentences for Counts 1 and 2 be run concurrent with one

24   another.

25         The parties also agree that pursuant to guideline 3B1.1,

16

1    the Offense Level for Count 1 and Count 2 should be increased

2    by four levels because this defendant was an organizer or

3    leader of criminal activity that involved five or more

4    participants.

5         The United States in this agreement does not oppose,

6    essentially, a three-level reduction in the defendant's Offense

7    Level for the defendant's acceptance of responsibility,

8    provided he continues to accept of responsibility through the

9    time of sentencing.

10        Your Honor, there is a fairly lengthy forfeiture

11   provision in this plea agreement.  That's contained in

12   Paragraphs 9 and 10.

13        Essentially, the defendant consents to the forfeiture

14   charged in Forfeiture A of the Superseding Information.

15        He agrees not to contest that forfeiture and to go along

16   with any proceedings to accomplish that forfeiture.

17        I will say, and I will comment a little bit more on this

18   once we have talked, Your Honor, that there is going to be a

19   process in this case by which the defendant is entitled to --

20   when we come up with an initial order of forfeiture, for me to

21   confer with his counsel and see if we have agreement on that.

22   And if we don't have agreement on that, we may come back to the

23   Court with an amended order.

24        And there is a possibility in this case that there may

25   be -- it may require a hearing for some factual findings to be

17

1    made in support of an innocent owner defense as well as that

2    some of the alleged cryptocurrency in this case was prior to

3    the drug trafficking conspiracy.

4                THE COURT:  Okay.

5                MR. HUNTER:  So we set all of that forth in the plea

6    agreement, and then we have agreed in these plea negotiations

7    that we would leave those avenues open for Mr. Barlow.  So I

8    just wanted to bring that to the Court's attention.

9                THE COURT:  Thank you.

10               MR. HUNTER:  The United States in this plea agreement

11   agrees not to further prosecute the defendant for conduct prior

12   to the date of the plea agreement that was, quote, part of the

13   same course of criminal conduct in the Superseding Information.

14          Both parties acknowledge that this agreement does not

15   bind other state, local, or federal prosecutions.

16          This plea agreement does contain an appellate waiver.

17   It's contained in Paragraph 13.

18          In exchange for the concessions made by the government

19   in this plea agreement, which include charging and sentencing

20   guideline concessions, this defendant waives the right to

21   appeal the conviction and sentence imposed unless those

22   sentences exceed the statutory maximum, which in this case is

23   more than 20 years on both counts.

24          The defendant also agrees to limit his right to

25   collaterally attack his conviction and sentence, agreeing to

18

1    limit such claims only to claims of ineffective assistance of

2    counsel and/or prosecutorial misconduct.

3           In this agreement, Mr. Barlow agrees that he is not a

4    prevailing party as that has been defined by federal law, and

5    he waives any rights to sue the United States in this

6    agreement.

7           He also waives any rights he may have under the

8    Freedom of Information Act to make claims and requests for

9    documents related to his prosecution.

10          The defendant acknowledges that this Court is not bound

11   by any of these sentencing recommendations and stipulations of

12   the parties.  And, of course, it's within the sole discretion

13   of the District Court to impose the sentence in this case.

14          This defendant agrees to abide by the terms of the

15   agreement.  He acknowledges that if he violates the agreement

16   the United States would be relieved of any of its -- any and

17   all of its obligations and could institute both charges or

18   recommendations that would have otherwise been prohibited by

19   the agreement.

20          He also acknowledges that he would not be relieved of

21   his obligations.

22          The defendant also acknowledges that, if he violates the

23   agreement or it's voided, he would waive any defenses he may

24   have based upon the statute of limitations and the Speedy Trial

25   Act.

19

1    The defendant acknowledges that he has read and

2 understands the plea agreement; that he accepts it knowingly

3 and voluntarily, not as a result of any force, threats, or

4 promises, other than the promises contained in the plea

5 agreement; that he has conferred with his attorney regarding

6 this plea agreement, the facts and circumstances of his case,

7 including the applicable law and any potential offenses, and

8 acknowledges that he is fully satisfied with the

9 representation, advice, or assistance -- and assistance of his

10 attorney in this case.

11    Your Honor, this is the complete agreement, along with

12 any other attachments to the agreement, between the parties.

13 It supersedes any other promises, representations,

14 understandings, or agreements.

15    I would point the Court's attention to the fact that on

16 page 5 and page 6 of this plea agreement it is signed by

17 Mr. Barlow and by Mr. Mishler.

18    And I would lastly turn the Court's attention to page 8,

19 which is Attachment A of the plea agreement.  That is the

20 Statement of Facts the United States represents would establish

21 the defendant's guilt -- the essential facts that would

22 establish his guilt had this matter proceeded to trial.

23    And, again, I would note on page 9 of the plea

24 agreement, it is signed by Mr. Barlow and Mr. Mishler.

25    THE COURT:  Thank you, Mr. Hunter.

20

1        Mr. Mishler, is that your understanding of the plea

2   agreement?

3        MR. MISHLER:  It is, Your Honor, and I do appreciate

4   Mr. Hunter bringing to light the possible forfeiture issues to

5   the Court's attention, so that I don't have to.

6        There is one issue that I have discussed with

7   Mr. Hunter, and I want to bring it to the Court's attention as

8   to regarding the amount of money laundering alleged in

9   Paragraph 7, Section C, of the plea agreement.

10       While the government maintains that the amount at issue

11  is between 12 and 15 million dollars, my client maintains that

12  that number is more realistically in the realm of four, four

13  and a half million, which would result in a lower guideline

14  range.

15       But since that count would be subsumed under a

16  concurrent sentence, we're prepared to proceed with the

17  sentencing as -- the plea agreement as it is laid out right

18  now, Your Honor.

19       THE COURT:  Okay.  So would it be your expectation,

20  Mr. Mishler, that at sentencing you'll want to address it, but

21  at least for purposes of the plea agreement, you are

22  recommending that the -- that the result of the property and

23  proceeds is between 12 and 15 million dollars, right?

24       MR. MISHLER:  That's correct, Your Honor.  This would

25  really only be an issue at sentencing.  I just didn't want to

21

1    surprise the Court with it at that time.

2         THE COURT:  Okay.  No.  I appreciate it.

3         And so -- so I think -- and please correct me if I'm

4    wrong, it would be your expectation that at least for purposes

5    of the -- for the calculation of the guideline range, you are

6    agreeing to the -- what you are saying is you are agreeing to

7    the recommendation because it's the -- at least the Base

8    Offense Level for Count 1 is lower than the Base Offense Level

9    for Count 2, and the recommendation is they run concurrently.

10        But for purposes of the 3553(a) factors, you want to be

11   able to argue what the proceeds are?

12        MR. MISHLER:  That's correct, Your Honor.

13        And my understanding is that the two counts would --

14   with the two levels added for a conviction for money

15   laundering -- they result in the exact same guideline level

16   anyway.

17        THE COURT:  Okay.  It seems like it likely would.  But

18   until I see the presentence report, I just -- you don't know.

19        Okay.  I mean, I'm fine with that record.

20        Mr. Hunter, do you want to respond to that at all or --

21        MR. HUNTER:  Only to explain to the Court that the

22   United States' position is that, as we stand right now, that's

23   what the evidence supports, is that guideline range.

24        There is going to be a process where we come out with a

25   preliminary order of forfeiture for the defendant to make

22

1    arguments to the contrary, and so I believe all of that will be

2    done in time for the Court to have all the facts before it,

3    before it needs to make any determination as to the sentencing

4    guideline range.

5              THE COURT:  Oh, okay.  So that kind of -- that factual

6    dispute will actually come up even before sentencing because it

7    will be addressed at least in part under the forfeiture

8    process?

9              MR. HUNTER:  That is our expectation, Your Honor.

10   Yes.

11             THE COURT:  Okay.  Thank you, Mr. Mishler.

12         Anything else on that point then or anything else with

13   regard to the plea agreement?

14             MR. MISHLER:  No, Your Honor.  Other than that, that

15   is my complete understanding.

16             THE COURT:  Okay.  And, Mr. Barlow, I know we've had

17   some back-and-forth, but that -- the summary that Mr. Hunter

18   gave and then the discussion that we just had, is that your

19   understanding of the plea agreement as well?

20             THE DEFENDANT:  That's my understanding.

21             THE COURT:  Okay.  And, in fact, you signed the plea

22   agreement; is that right?

23             THE DEFENDANT:  I did sign it, Your Honor.

24             THE COURT:  Did you read it before you signed?

25             THE DEFENDANT:  Yes, I did, very carefully.

23

1      THE COURT:  Okay.  Good.  And then you also talked to

2  your attorneys about it before you signed it?

3      THE DEFENDANT:  Correct, I did.  And that's when we

4  brought up the -- the difficulty -- the difference in the money

5  laundering amounts which Mr. Hunter spoke about.

6      THE COURT:  Okay.  And so, yeah, what the plea --

7  because you know, but it bears repeating, what the plea

8  agreement is -- it's recommending this particular dollar amount

9  for the proceeds from the drug sales, the drug conspiracy.

10      That's going to be used as the basis for the guideline

11  calculations, and we'll talk more about that in a minute.  And

12  it sounds like the parties are in agreement that you are still

13  reserving your right.

14      To the extent that I look at the relevant conduct, you

15  are reserving the right to say, well, the relevant conduct that

16  I should consider after the guideline range has been calculated

17  is actually less proceeds.

18      Do you understand that?

19      THE DEFENDANT:  Say that last part again.

20      THE COURT:  I don't know if I can.  So, basically,

21  yeah, it's a little bit different in terms of what I normally

22  see.

23      So let me make sure that I am on the same page with you,

24  Mr. Barlow, and that is -- so what the plea agreement says is

25  that when the Court looks at -- when the Court calculates the

24

1   guideline range -- and I'll talk for a moment what that means,

2   but when the Court calculates the guideline range, that

3   everybody is in agreement.  That for purposes of that, you plug

4   in some numbers to figure out what the applicable guideline

5   range is.

6          And for that purpose only, you do -- you agree for that

7   limited purpose -- my glasses just broke -- that the proceeds

8   from the drug conspiracy are between 12 and 15 million dollars,

9   but -- but you are reserving the right with regard to the

10  proceeds from the drug conspiracy for other purposes to say,

11  no, no, no, it wasn't -- the range wasn't 12 to 15 million

12  dollars.  It was something significantly less than that.

13         Is that your understanding?

14          THE DEFENDANT:  Yeah.  My understanding is that, for

15  the drug conspiracy, it was the amount of -- of narcotics

16  seized that are the guidelines for that -- for the drug

17  charges, but the money is for the -- the money amount is for

18  money laundering charges.

19         And so, since these are going to be served concurrently,

20  and even if it was -- if it were $12 million, that Offense

21  Level ends up being slightly less than the Offense Level for

22  the drug conspiracy itself.

23         And since the -- the money laundering, even if it is

24  this high amount, it would be swallowed up by the drug

25  conspiracy charges.

25

1    I'm fine with accepting that right now.  Just -- I mean,

2  there is -- there's the personal part.  I don't want to be

3  pleading guilty for things that I don't think are -- are

4  accurate.

5    However, my understanding is -- is if it was down to the

6  corrected amount, which is -- I maintain is between four and

7  four and a half million dollars, 4.3 million exactly, I -- even

8  if that was conceded by -- by Mr. Hunter, my sentencing time

9  would not change because the conspiracy charges still have a

10  higher Offense Level.

11    That's my understanding, Your Honor.

12    THE COURT:  Well, I guess my only question -- and if

13  the lawyers want to correct me -- is, at least as I read the

14  plea agreement, it is not necessarily an admission.

15    It is a recommendation that the proceeds derived -- and

16  this, though, does say the proceeds derived as a result of the

17  violations in Count 1 and Count 2 of the information is between

18  12 and 15 million dollars.

19    I don't read that as an admission, although I do read

20  that as a recommendation, including as to Count 1.

21    MR. HUNTER:  Your Honor, the Court's understanding is

22  right.

23    The United States' position is:  That's what the parties

24  are agreeing to right now because that's what the evidence

25  supports.

26

1    I expect that in the coming months Mr. Barlow, through

2    Mr. Mishler, is going to provide evidence that that number is

3    lower.

4        If I receive that, then that would be information we

5    would put in front of the Court.  That would change the

6    guideline calculation.  It would also change potentially the

7    forfeiture so that there would be an amended order of

8    forfeiture.

9        I don't believe it is material as to guilt or innocence.

10   It is "that's where the evidence supports right now," but we're

11   leaving the avenue for Mr. Barlow to present mitigating

12   evidence.

13       THE COURT:  Okay.  And -- and as I look at the

14   Statement of Facts, again, going back to what -- to the

15   admission and the guilty conduct, the facts to which Mr. Barlow

16   is agreeing, it does not include the -- any information on the

17   proceeds derived.

18       MR. HUNTER:  That is correct.

19       THE COURT:  Am I reading that correct, Mr. Mishler?

20       MR. HUNTER:  We're not trying to lock him into any

21   factual statements on that issue.

22       THE COURT:  Okay.

23       MR. HUNTER:  So we're setting forth the elements of

24   the offense, and we're leaving an avenue for Mr. Barlow to

25   argue about the dollar amounts.

27

1          THE COURT:  Okay.  Okay.  That's helpful.

2       Mr. Mishler, do you want to add anything else?

3          MR. MISHLER:  I just apologize that we've made this as

4    confusing as we did, Your Honor.

5       It was the result of a lot of negotiations back and

6    forth, and this seemed the cleanest way to present it to you.

7          THE COURT:  No, no.  Seriously, nothing to apologize

8    for.  I just want to make sure that I understand it, and I want

9    to make sure that as I -- what I understand Mr. Barlow to have

10   agreed to, from what his comments are to me, that we're all on

11   the same page, and I'm satisfied that we are.

12       Mr. Barlow, are you satisfied as well that we're all on

13   the same page?

14       And in particular, you know, my last questions, just to

15   be clear, and I'll get to the Statement of Facts in a few

16   minutes, but in the Statement of Facts, I am going to ask you

17   about -- in that, you are not agreeing at this point today to a

18   particular dollar amount of proceeds, really from either

19   Count 1 or for Count 2.

20       So with that clarification, all of this discussion and

21   the substance of the plea agreement, is that what you

22   understand that you agreed to?

23          THE DEFENDANT:  Correct.

24          THE COURT:  Okay.

25          THE DEFENDANT:  Thank you, Your Honor.

28

1       THE COURT:  Thank you for your patience as I make sure

2   I understand, too, what -- what exactly your agreement is so

3   that we can make sure it gets effectuated.

4       So then with that, Mr. Barlow, do you understand that

5   any agreement regarding a sentence to be recommended to the

6   Court is not binding on me, so that if I decline to follow your

7   agreement and impose a higher sentence, you cannot withdraw

8   your guilty plea simply because you do not like the sentence

9   that I impose?

10      THE DEFENDANT:  I understand, Your Honor.

11      THE COURT:  Okay.  Has anyone, including an officer on

12  an agent of the government, made any promise to you other than

13  the plea agreement itself to convince you to plead guilty?

14      THE DEFENDANT:  No, Your Honor.

15      THE COURT:  Has anybody tried to force you to plead

16  guilty?

17      THE DEFENDANT:  No.

18      THE COURT:  Do you understand that the offense to

19  which you are pleading guilty is a felony offense, so that if I

20  accept your plea, you will be adjudged guilty of that felony,

21  or both felonies, and such adjudication may deprive you of

22  valuable civil rights, which include the right to vote, to hold

23  public office, to serve on a jury, and the right to possess any

24  kind of firearm in the future?

25      THE DEFENDANT:  Yes.  It -- it sucks, but I -- I

29

1   understand, especially after all this.

2        THE COURT:  It is -- the consequences of a felony are

3   very serious, so -- but you are aware of those consequences?

4        THE DEFENDANT:  I am aware, Your Honor.

5        THE COURT:  Okay.  The potential penalty in your case

6   includes -- and this is what's set forth in federal law --

7   for -- really for both counts, a term of imprisonment for up to

8   20 years.

9        For Count 1, a term of supervised release of three years

10  to life, with a fine not to exceed a million dollars.

11       And on Count 2, a term of supervised release of up to

12  three years, and a fine not to exceed $500,000 or twice the

13  value of the property involved in the transactions, whichever

14  is greater.

15       And then for both of the counts, combined, there would

16  be a mandatory special assessment of $200, which will be due

17  prior to sentencing.

18       Do you understand that those are the statutory penalties

19  for the offenses?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  You should also know, Mr. Barlow, that

22  there's no parole.  So you must serve the full amount of any

23  prison term to which you are sentenced.

24       Do you understand that?

25       THE DEFENDANT:  Yes, Your Honor.

30

1    THE COURT:  So following the service of your sentence,
2  you will be required to serve a term of supervised release.
3    Supervised release is a period of supervision by the
4  probation office, and there are strict terms and conditions
5  during that period.
6    If you violate the conditions of supervised release,
7  your release can be revoked and you can be sentenced to an
8  additional term of imprisonment for up to the full term of
9  supervised release, without credit for time already served on
10  the period of supervised release and also without credit for
11  time already served in prison.
12    Do you understand that?
13    THE DEFENDANT:  Is supervised release is release
14  pending sentencing or is supervised release at the end of the
15  sentence?
16    THE COURT:  At the end of the sentence.  Yeah.  It's a
17  hard concept if you haven't been in the criminal justice system
18  before.  So, yes.
19    So what -- how it works in federal court is you would
20  be -- if you are sentenced to a period of incarceration, after
21  that period of incarceration is over, at some -- in state
22  court, sometimes they call it community control.  We call it
23  supervised release.
24    So in the federal system, after your period of -- any
25  period of incarceration, it's a period of supervised release.

31

1    And there are strict terms and conditions such as, you
2    know, you might have to have regular drug tests.  You'll have
3    to be working or trying to find a job and different things.
4         Sometimes it's you have to be in mental health
5    treatment.  And if you are not complying with those terms, the
6    probation officer will petition the judge and say, "Hey, this
7    defendant is not in compliance with his terms, and, you know,
8    what are we going to do about it?"
9         And if I find as the trial judge that your violations of
10   the terms of supervised release are serious enough, I can
11   impose -- I can require you to go back to prison for the full
12   term of supervised release, without credit for your time
13   already served in prison and also without credit for the time
14   served on supervised release.
15        Do you understand that?
16        THE DEFENDANT:  That, I do.  I think the other inmates
17   explained it to me as they call it "time on the shelf."
18        THE COURT:  Yeah.  That's probably a good description.
19   I've not heard it called that.
20        THE DEFENDANT:  And if you -- essentially, as you
21   said, not parole, but violate parole or violate those
22   conditions, that the time on the shelf comes back and bites you
23   in the keister.
24        THE COURT:  Yes, exactly.  And so -- and I know we're
25   going to talk before we're done today, but after we're done

32

1    taking your plea, I know we're going to talk -- your attorney

2    did file a motion to have you released before sentencing, and

3    so that's pretrial release.

4        So there's really kind of what I would call three

5    phrases.  One is pretrial release.  And we're going to talk

6    about that for you in a few moments.

7        And then after sentencing, if there is a period of

8    incarceration, that would be in the middle.  And then at the

9    end is this supervised release or probation if you don't get

10   incarceration.

11       And the pretrial release period and the supervised

12   release period are, frankly, very similar.  You are just

13   reporting to a different office.

14       Does that make sense?

15          THE DEFENDANT:  Okay.

16          THE COURT:  Okay.

17          THE DEFENDANT:  Understood.

18          THE COURT:  I've never heard it called the time-out

19   shelf, but I might use that again.  So thank you for that term.

20       So do you also understand, Mr. Barlow, that you may be

21   ordered to make restitution, which is a monetary payment, if

22   there are any identified victims of the offense?

23          THE DEFENDANT:  I've not heard that before, but it

24   makes sense to me.

25          THE COURT:  Okay.  Do you further understand that you

33

1  will be required to forfeit or turn over certain property to

2  the government that was either acquired with money from illegal

3  activities or was used in the commission of the offense?

4           THE DEFENDANT:  Correct.

5           THE COURT:  Do you understand all of these possible

6  consequences of your plea that I've just gone over?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And knowing the maximum penalties I can

9  impose and the possible consequences, do you still want to

10  plead guilty?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  So the United States Sentencing Commission

13  has established guidelines for judges to follow to determine

14  the appropriate sentence in every case.  These guidelines are

15  advisory, and they do provide guidance to me.

16      And these are the guidelines we were talking about

17  before in terms of you plug in certain factors, and it kind of

18  tells me how serious the Offense Level is, and it kind of looks

19  at some national numbers to know the seriousness of the

20  offense.

21      Did you and your attorney talk about the advisory

22  sentencing guidelines?

23          THE DEFENDANT:  Yes, we have.

24          THE COURT:  It sounded like you talked probably a lot

25  about it.  In addition to those guidelines, there are certain

34

1   factors that are set forth in federal law that I also have to

2   consider when I determine your sentence, and really the

3   sentence in every case.

4        Those factors are the nature and circumstances of the

5   offense, together with the history and characteristics of the

6   defendant, the need for the sentence imposed to reflect the

7   seriousness of the offense, to promote respect for the law and

8   to provide just punishment for the offense, to afford adequate

9   deterrence to criminal conduct, to protect the public from

10  further crimes of the defendant, and to provide the defendant

11  with needed educational or vocational training, medical care,

12  or other correctional treatment in the most effective manner.

13       I also have to consider the need to avoid unwarranted

14  sentencing disparities and the need to provide restitution to

15  any victims of the offense.

16       Do you understand I'm going to consider all of these

17  factors when I determine your sentence?

18            THE DEFENDANT:  Correct, Your Honor.

19            THE COURT:  So before you are sentenced, a presentence

20  report will be prepared by the probation department.  This

21  report will contain the probation officer's conclusion

22  regarding the applicable imprisonment range under the

23  guidelines.  But, again, that range is only advisory and is not

24  binding on me.

25       Do you understand that?

35

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  So once that report is prepared, you and

3   the government will have an opportunity to review it and then

4   to challenge any facts and conclusions contained in the report

5   if you want to.

6      I'm not going to determine your sentence until that

7   process is complete.

8      Also, I'm not bound by any stipulation or agreement

9   between you and the government as to any facts, conclusions, or

10   as to the sentence itself.  I alone decide those matters.

11      Do you understand that?

12      THE DEFENDANT:  Yes, Your Honor.

13      THE COURT:  Do you understand that any sentence

14   ultimately imposed may be different than any estimate your

15   attorney may have given you?

16      THE DEFENDANT:  Yes, I understand that, Your Honor.

17      THE COURT:  Do you understand that, after the

18   guideline range is determined, I do have the authority in some

19   circumstances to depart either up or down from that range, and

20   I'll also examine the other statutory factors that I just

21   talked about, and those factors could result in a sentence that

22   is either longer or shorter than the guideline range?

23      THE DEFENDANT:  Yes, Your Honor.

24      I'll have my fingers crossed for lower, but I understand

25   it could be higher.

36

1          THE COURT:  Okay.  Do you understand that, if the

2     sentence is more severe than you expect, you are still going to

3     be bound by your plea and you'll have no right to withdraw it?

4          THE DEFENDANT:  Yes, I do, Your Honor.

5          THE COURT:  Do you understand, by entering into this

6     plea agreement and entering a plea of guilty, you will have

7     given up certain rights to appeal or to attack your conviction

8     and sentence?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT: So, Mr. Barlow, I do also advise you that

11    under the Constitution and laws of the United States you do

12    have the right to continue to plead not guilty.

13         You have the right to be tried by a jury.  At such a

14    speedy and public trial, you would have the right to the

15    assistance of counsel, the right to confront and cross-examine

16    any witnesses that testify against you, the right not to be

17    compelled to incriminate yourself, and also the right to the

18    issuance of subpoenas or compulsory process to compel the

19    attendance of witnesses who could come and then testify in your

20    defense.

21         At such a trial, you would be presumed innocent until

22    such time, if ever, the government established your guilt by

23    competent evidence beyond a reasonable doubt.

24         Do you understand that if you plead guilty, and if I

25    accept your plea, there will be no trial because you will have

37

1 waived or given up your right to trial as well as the other

2 rights associated with trial that I just described?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand that, if I accept your

5 plea, I can still impose the same penalty as though you pled

6 guilty, stood trial, and been convicted by a jury?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If you plead guilty, do you understand

9 that you'll have to waive your right not to incriminate

10 yourself because I'm now going to ask you questions about what

11 you did in order to satisfy myself that you are guilty as

12 charged and you are going to have to acknowledge your guilt

13 here in court today?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Okay.  So we talked a few moments ago

16 about the plea agreement.  And part of the plea agreement is

17 Attachment A, the Statement of Facts.

18          And what that does is, like I said, it makes no mention

19 of any specific proceeds other than -- it just -- I think when

20 you -- investigators at one point did find some money,

21 approximately $50,000 in U.S. currency.  That's the only

22 reference to any specific dollar amounts in the Statement of

23 Facts.

24          But the Statement of Facts talks about what you had been

25 doing, using the dark web market to distribute psychedelic

38

1   mushrooms, and how you handled the orders, and also your

2   efforts to conceal the proceeds and payments.

3         Did you read that Statement of Facts?

4         THE DEFENDANT:  I did, Your Honor.

5         THE COURT:  And, in fact, it appears to me that you

6   signed that Statement of Facts.  Is that right?  Did you sign

7   it?

8         THE DEFENDANT:  I did, Your Honor.

9         THE COURT:  Were those facts correct?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Did you see anything that was inaccurate

12  in the Statement of Facts?

13        THE DEFENDANT:  No, I don't recall so.

14        THE COURT:  Okay.  Are you offering to plead guilty

15  here today because you are, in fact, guilty of Counts 1 and 2

16  as charged in the Superseding Information?

17        THE DEFENDANT:  Yes to Count 1, Your Honor.  I would

18  have thought -- now that Mr. Hunter has explained, that my

19  understanding of what my money laundering is was not at all

20  accurate.

21        So according to the government's definition, I did

22  commit money laundering, yes.

23        THE COURT: So I can understand what you just said,

24  basically what you are saying is -- but what you knew before

25  this case was filed, you didn't think you were committing money

39

1    laundering.

2         But now that Mr. Hunter as part of the plea agreement

3    has explained the elements, you understand that you are, in

4    fact, guilty of money laundering?

5         THE DEFENDANT:  Yes, Your Honor.

6         THE COURT:  Okay.  Thank you.  I just wanted to make

7    sure I understood your comment.  Well, good.

8         In light of everything I've told you about your rights,

9    in light of all of my questions to you this afternoon, how do

10   you now plead to Counts 1 and 2, guilty or not guilty?

11        THE DEFENDANT:  I plead guilty, Your Honor.

12        THE COURT:  Okay.  Thank you, Mr. Barlow.

13        I have observed the appearance and responsiveness of

14   Mr. Barlow in giving his answers to the questions that I've

15   asked.

16        I am satisfied that he is in full possession of his

17   faculties.  He is not suffering from any apparent physical or

18   mental illness or under the influence of narcotics or alcohol.

19        Mr. Barlow is competent and understands the proceedings

20   in which he is engaged.  He understands the nature and meaning

21   of the charges as well as the consequences of his plea of

22   guilty, and he is aware of the plea negotiations and the plea

23   agreement presented to the Court.

24        Therefore, I do find there is a sufficient factual basis

25   to accept the plea of guilty, and I find that his plea is made

40

1   voluntarily, with an understanding of the nature of the charges

2   as well as the consequences of his plea.

3         So I do accept the guilty plea and the plea agreement

4   and will enter a judgment of guilty to both counts.

5         The judgment and sentence imposed upon Mr. Barlow in

6   this case will conform to the terms of the plea agreement and

7   will be consistent with the sentencing framework as defined by

8   the United States Supreme Court in *U.S. versus Booker*.

9         So before we recess for that presentence report to be

10  prepared, as I alluded to earlier, Mr. Mishler, I know that

11  you've also filed a motion for pretrial release of Mr. Barlow.

12        Would you like to address the motion?

13         MR. MISHLER:  Yes, Your Honor.

14        I was present at the initial detention hearing on behalf

15  of Mr. Barlow, so I'm aware of what Judge Koppe's concerns

16  were, which led her to a detention order, but those concerns

17  have substantially changed in the meantime.

18        Specifically, her concern was with the access that

19  Mr. Barlow would have had to the cryptocurrency, which made him

20  a flight risk.

21        And as part of the ongoing negotiations with the

22  government, Mr. Barlow has turned all of that cryptocurrency

23  over to the government, so he no longer has access to any of

24  that.

25        In addition, there was some concern about his ability to

41

1    obtain or possible possession of a fake identification, and I

2    believe the government's investigation has laid that to rest as

3    well.

4         And I think, most importantly, now that he has pled, I

5    don't think the government opposes his release, which would

6    assist our defense in preparing for sentencing, both in the

7    arguments and the -- more importantly, I think, for the Court,

8    is the forfeiture issue, and him having access to computers and

9    to my office would greatly assist in laying that issue to rest

10   with finality.

11        So for those reasons we would ask that he be released on

12   his recognizance, Your Honor.

13        THE COURT:  Thank you, Mr. Mishler.

14        Mr. Hunter, any response?

15        MR. HUNTER:  Just briefly, Your Honor.

16        It's true at the time that Mr. Barlow was arrested the

17   United States, you know, was attempting to preserve the status

18   quo in terms of any assets that could be moved, any risk of

19   flight that might have been posed by Mr. Barlow at that time,

20   and any obstructive activity that could have taken place.

21        All of those concerns have been alleviated over the last

22   few months.

23        I've worked with Mr. Mishler almost as closely as I've

24   ever worked with any attorney.  I'm satisfied that the things

25   that concerned me in April are no longer of issue, and I don't

42

1    oppose the defendant's release under the conditions recommended

2    by Pretrial and the Court.

3         THE COURT:  With regard to the cryptocurrency, looking

4    at the Superseding Information as well as the plea agreement,

5    it's pretty detailed, and so at least the cryptocurrency that

6    the government has been able to identify that kind of created

7    the earlier risk, that has been turned over; is that right?

8         MR. HUNTER:  That is correct, Your Honor.  Everything

9    that I think can be recovered is in the possession of the

10   United States.

11        THE COURT:  Okay.  All right.  Thank you, Mr. Hunter.

12        So I will say, based on the arguments and discussion

13   just now, and I did talk with our Pretrial Services officer

14   earlier today, I do find that there are conditions of release

15   for Mr. Barlow that I can impose that would reasonably assure

16   the safety of the community and also would assure his

17   appearance at future court proceedings.

18        So, Mr. Barlow, I'm going to order you released on your

19   own recognizance in this case.

20        I am told that, by doing this now, you should be out by

21   the end of the day, so we'll get the process moving.

22        However, before we get there, I do have to advise you of

23   several things.

24        So by releasing you on your own recognizance, you don't

25   have to post any money or property as a bond, but there are

43

1    things you do have to do and some things you are not going to

2    be allowed to do while this case is pending, and I have to

3    explain those things to you.

4         So, first, let me tell you about those release

5    conditions -- if I can with my broken glasses.

6         So let's go through them.  First, you must not violate

7    any federal, state, or local law while you are on release.

8         Second, you must report immediately to the Pretrial

9    Services every and any contact with law enforcement personnel,

10   including arrests, questioning, or traffic stops.

11        And I like to point out that that includes if you get

12   pulled over for speeding; tell your Pretrial Services Officer.

13        Any interactions you have with law enforcement, you need

14   to let him or her know.

15        You must cooperate in the collection of a DNA sample if

16   the collection is authorized by law.

17        You must immediately advise the Court and your defense

18   counsel in writing before making any change of residence or

19   telephone number.

20        And you must appear in court as required and must

21   surrender as directed to serve any sentence that is imposed.

22        In addition to those requirements, you are going to have

23   to submit to supervision and report for supervision to the

24   Pretrial Services Office in Las Vegas, Nevada.  So that will be

25   handled with an officer in Las Vegas.

44

1    You must continue or actively seek employment.  You must

2    surrender any passport that you have to the Pretrial Services

3    Office in Las Vegas, Nevada, and not obtain another passport or

4    other international travel document.

5    You must abide by the restrictions on personal

6    association, residence, or travel.  And specifically, you are

7    going to have to reside at an address approved by Pretrial and

8    restrict your travel to Nevada and the Southern District of

9    Ohio only, and so really -- really the only reason to come to

10   Ohio will be for court purposes.

11   Avoid all contact directly or indirectly with any person

12   who is or may become a victim or potential witness in the

13   investigation or prosecution of this case.

14   And that's for -- and that includes all co-defendants.

15   I know that your brother is obviously a co-defendant, and I

16   just -- he just pled, as you likely know, a few moments ago,

17   and you can obviously talk with your brother.

18   However, to the extent you talk with your brother, you

19   cannot talk about this case.  Don't talk about anything related

20   to the case.  All right?

21   Also, you shall not use or unlawfully possess a narcotic

22   drug or controlled substance unless prescribed by a licensed

23   medical practitioner.

24   You are going to be required to test for prohibited

25   substances if required by the Pretrial Services Office or the

45

1  supervising officer.  That testing may be used with random

2  frequency and may include urine testing, the wearing of a sweat

3  patch, a remote alcohol testing system, and/or any form of

4  prohibited substance screening or testing.

5       You must not obstruct, attempt to obstruct, or tamper in

6  any fashion with the efficiency and accuracy of any

7  prohibited -- of any prohibited substance screening or testing.

8       You also may be required to participate in a program of

9  inpatient or outpatient substance abuse therapy and counseling

10  if directed by the Pretrial Services Office or supervising

11  officer.

12       Do you understand these are all your release conditions,

13  Mr. Barlow?  Do you have any questions about any of them?

14            THE DEFENDANT:  I have no questions, Your Honor.

15            THE COURT:  Okay.  And, Mr. Mishler, do you have a

16  question?

17            MR. MISHLER:  I just wanted to clarify one issue, Your

18  Honor.  I think it's Condition 9, Section I, where it limits

19  him to Nevada and the Southern District of Ohio.

20            THE COURT:  Yes.

21            MR. MISHLER:  I would just ask for an exception as

22  well.  He has a lot of family in Utah.  My understanding is

23  that after his release he will be traveling to Utah to spend

24  Thanksgiving with family.

25            So if we could add Utah as an allowed state as well or

46

1  at least for the purposes of the holidays, that would be

2  greatly appreciated.

3        THE DEFENDANT:  In addition, I do have a vehicle to

4  pick up that is in Colorado.  That would be one trip only.

5      If that's not allowed, I can figure out someone else to

6  pick it up for me.  It would be more convenient if I didn't

7  have to hire someone.

8        THE COURT:  Here's what I will do.  I will allow you

9  to go to Utah for Thanksgiving.  To the extent that you need to

10 pick up a car or the Christmas holidays are coming up, you are

11 going to need to get permission in context, so at that point we

12 know exactly what you are requesting and can really look at it

13 in context.

14     I don't want to start making a lot of exceptions before

15 we even get the rule in place.

16     So, like I said, I know we're two days, three days

17 before Thanksgiving, so I will allow an exception to go to Utah

18 for Thanksgiving.

19     But after the Thanksgiving holiday, by Sunday evening, I

20 expect you to be in Nevada at your residence that we have the

21 address for.

22     And to the extent you have other things you think you

23 need to leave Nevada for, you can talk with your Pretrial

24 Services Officer.  All right?

25       THE DEFENDANT:  I appreciate it, Your Honor.

47

1       THE COURT:  Okay.  I will say, for the holidays, I've

2  seen it done both ways, where the attorney asks for kind of the

3  exception to the Pretrial Services' conditions.  So either one

4  way or the other, you could file something and say, okay, it's

5  Christmas, here's what he wants to do, but I want -- when that

6  happens, I want to know kind of the context, the days, so I've

7  got context for approving that.

8       So any other questions then about the release

9  conditions?

10      MR. MISHLER:  No, Your Honor.  Thank you.

11      THE COURT:  Okay.  So then the final thing I do need

12 to advise you on, Mr. Barlow, is what happens if you don't

13 comply with these conditions.

14      First, if you violate any of these conditions, you may

15 be subject to stricter conditions.  For example, you or someone

16 else could be asked to put up bond, or you could also have your

17 travel restricted, or you could be put under house arrest in a

18 worst-case scenario.  If you do not comply with your bond

19 conditions, you could spend the rest of your pretrial period in

20 jail.

21      Also, you need to be aware these conditions are going to

22 be in a court order.  So what that means is, if you violate any

23 of the conditions, you would be in contempt of court.  And

24 because that is a criminal matter, you could get a jail term or

25 fine or both if you are convicted of contempt of court.

48

1       The other issue is, if you don't make all of your court

2   appearances, the government can charge you with another crime,

3   the crime of failure to appear.  Somebody convicted of that

4   crime, the crime of failure to appear, could get a jail term, a

5   fine, or both.

6       Finally, if you commit any type of crime while you are

7   out on bond in this case, you could get two sentences for that.

8   The one sentence would be for the crime -- the sentence that

9   the crime usually carries -- and then the second would be for

10  committing a crime while on bond.

11      So the second sentence can be for up to ten years for a

12  felony and one year for a misdemeanor.

13      Do you have any questions about that information?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Okay.  So as I said, this is a court

16  order.  The bond order is a court order.  And I'll put it on as

17  soon as we get off the bench here so that we can start to get

18  you processed.

19      There is a place for you to sign the bond order.  But

20  since we're doing this remotely, do you authorize my courtroom

21  deputy to sign the form on your behalf?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  Okay.  So what we'll do is Ms. Bragg will

24  sign it.  She will get it filed.  We will get a copy of the

25  order to Mr. Mishler.  He will get a copy to you.

49

1    Once you get it, I've read to you all of the terms, but

2 I am asking you to read it yourself as soon as you get it so

3 that you are familiar with the terms and the limitations.

4    And like I said, at least for now, the only exception on

5 the residency requirements and travel requirement is I will

6 allow you to go to Utah for Thanksgiving, but you need to be

7 home in Nevada by, you know, Sunday evening at 9:00 Nevada

8 time.  All right?

9    THE DEFENDANT:  Agreed.

10    THE COURT:  Okay.  Any questions on that?

11    THE DEFENDANT:  No questions.

12    THE COURT:  Okay.  So then the next step, Mr. Barlow,

13 is your attorney will also be talking to you about getting --

14 meeting with the probation department so that presentence

15 report can be prepared.

16    Is there anything further on behalf of Mr. Barlow,

17 Mr. Mishler?

18    MR. MISHLER:  No, Your Honor.  Thank you.

19    THE COURT:  Okay.  Thank you.

20    Anything further on behalf of the government,

21 Mr. Hunter?

22    MR. HUNTER:  No, Your Honor.  Thank you.

23    THE COURT:  All right.  Thank you, counsel.  Thank

24 you.  Thank you, Mr. Barlow, for your time and your questions

25 today.

50

1      And like I said, there's lots of rules for the pretrial

2  release.  It will be good practice for supervised release, and

3  I'll see you at your sentencing.  Thank you.  Court will be

4  adjourned.

5      (Proceedings concluded at 4:18 p.m.)

6                          - - -

7                  C E R T I F I C A T E

8

9      I, Allison A. Kimmel, do hereby certify that the

10  foregoing is a true and correct transcript of the proceedings

11  before the Honorable Sarah D. Morrison, Judge, in the United

12  States District Court, Southern District of Ohio, Eastern

13  Division, on the date indicated, reported by me in shorthand

14  and transcribed by me or under my supervision.

15

16

                        s/Allison A. Kimmel_____
17                      Allison A. Kimmel, FAPR, RDR, CRR, CRC
                            Official Federal Court Reporter
18                                    April 17, 2023

19

20

21

22

23

24

25